**In re D.A.C. MEATS, INC., t/a Meat The People, Debtor.**

**Bankruptcy No. 80 B 20232.
80 Adv. 2090.**

United States Bankruptcy Court,
S. D. New York.

Jan. 22, 1981.

Sidney Turner, White Plains, N.Y., trustee.

Markovits, Markovits & Blustein, P.C., Middletown, N.Y., for debtor; Burt J. Blustein, Middletown, N.Y., of counsel.

## DECISION ON COMPLAINT OF TRUSTEE DIRECTING SURRENDER OF PROCEEDS OF MONEY.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The issue in this proceeding is whether or not this debtor's payment to a creditor on account of an antecedent indebtedness, made within 90 days of the commencement of this case, falls within one of the exceptions under Code § 547 to what would otherwise be a classical example of a preference. The trustee in bankruptcy commenced this adversary proceeding against a creditor to recover for the benefit of the estate a $4000 payment which it received from the above-captioned debtor on account of a then outstanding balance due of $67,557.37.

### FINDINGS OF FACT

1. The Debtor, D.A.C. Meats, Inc., t/a Meat The People, was engaged in business as a retail meat shop in Suffern, New York. It filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 3, 1980. The plaintiff was appointed interim trustee by the United States Trustee, pursuant to 11 U.S.C. § 15701. Plaintiff continues to serve as trustee in bankruptcy in accordance with 11 U.S.C. § 15703(b).

2. Defendant, Greenwood Packing Corp., is a wholesale meat supplier of provisions to retail meat and butchers, and is located in Middletown, New York.

3. On or about February 23, 1980, the debtor obtained and delivered to Greenwood a check of the same date in the sum of $4000, payable to Greenwood. This check was thereafter dishonored for insufficient funds. The check represented an on account payment against the debtor's open account arising out of its previous purchases of meat products from Greenwood. There was no proof that this payment had reference to any specific obligation which may have been incurred within 45 days of the payment.

4. After the dishonor of the debtor's $4,000 check its principal, Mr. Capria, had various discussions with Greenwood's president, Mr. Capaluzzo, concerning Greenwood's refusal to deliver any more meat products to the debtor unless payment was received at or before delivery. An arrangement was worked out between them whereby the debtor agreed to deposit cash or its customers' checks with a third entity, Emrite Incorporated, which was located several miles from the debtor's place of business. Emrite would then call Greenwood and advise Greenwood that it could ship a delivery of meat products to the debtor to the extent of the deposit then held by Emrite. In this manner Greenwood could be satisfied that when it sent a truck with meat products to the debtor payment was assured from the deposit and that the truck need not return with the perishable products, as had occurred before the deposit arrangement was established. This arrangement was not in the ordinary course of business of either the debtor or Greenwood and was established because of Greenwood's disenchantment with the debtor's financial condition.

5. On or about March 31, 1980, the debtor replaced the dishonored check with a bank check for $4000 payable to Greenwood, which was then delivered to Greenwood.

6. According to the debtor's records in the trustee's possession Greenwood made no further deliveries on credit after February 28, 1980, and submitted no further invoices to the debtor.

7. In April, 1980 Greenwood made four deliveries of meat products totalling $10,169.84, which the debtor received and used in its business for which payment was not received by Greenwood. Greenwood's invoices reflect that it sold the meat products to Emrite, although delivery was made to the debtor who acknowledged liability for the payment. From the documents in evidence it is not clear whether Emrite acted as primary vendee in the transactions or whether its purchases were really in the nature of a guaranty of deliveries to the debtor. In any event, the debtor received

and used the merchandise, according to the testimony of its principal. Moreover, he acknowledged that the debtor was liable to Greenwood for the purchase price of the four unpaid deliveries, aggregating $10,-169.84.

## DISCUSSION

The debtor concededly paid to the defendant, an unsecured creditor, $4000 on account of an antecedent debt owed by the debtor, made 90 days preceding the bankruptcy case, which would enable the defendant to receive more than it would receive in liquidation. Pursuant to Code § 547(f), the debtor was presumed to have been insolvent during that 90 day period. Hence, the trustee in bankruptcy established a transfer proscribed under Code § 547(b) unless one of the exceptions to avoidability under Code § 547(c) is operative.

The defendant does not contend that it received a payment of a debt incurred by the debtor in the ordinary course of their businesses within 45 days after the debt was incurred, as permitted under Code § 547(c)(2). Indeed, there is no proof when the debtor incurred the debt with respect to which the payment was made; it was merely paid on account of a substantial open indebtedness. Moreover, the court has found that the arrangement pursuant to which the payment was made was not in the ordinary course of either the debtor's or defendant's business. The debtor's financial condition had deteriorated to the point that the defendant refused to make any further deliveries to the debtor unless they were authorized by a third party, Emrite, after the debtor deposited with Emrite, cash or its customers' checks to ensure payment. Evidently this setup broke down because deliveries valued in excess of the payment in question were made by the defendant without a reciprocal payment to the defendant. Therefore, the defendant premises its case on the "new value" concept expressed under Code § 547(c)(4) which reads as follows:

"(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;"

The trustee maintains that Greenwood did not give new value because "It appears that the debtor had transmitted funds to Emrite Incorporated as payment for the provisions that were to be delivered to it but that Emrite apparently failed to pay the defendant for those deliveries that it had authorized the defendant to deliver to D.A.C. Meats." This position is totally unsupported by any evidence. Greenwood proved that it delivered these provisions to the debtor, who acknowledged their receipt and liability for payment. On the other hand, the trustee did not introduce any evidence upon which an inference of payment to Emrite for these provisions could be drawn.

The trustee also asserts that the $4000 payment was a substitution of a previous obligation, namely the replacement of the previously dishonored check. Apparently this argument is directed towards the exception in the definition of "new value" in Code § 547(a)(2) which excludes "an obligation substituted for an existing obligation" and reads as follows:

"(a) In this section—

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, *but does not include an obligation substituted for an existing obligation;*" [Emphasis added]

It is not the substitution of the $4000 check for the previously dishonored check that is of significance. The dishonored check did not represent an obligation. It was given

purportedly in payment of the debtor's existing obligation for meat purchases. The previous purchases constituted the obligation; not the dishonored check. The replacement of the dishonored check with the $4000 check which is the subject of this action cannot under any stretch of the imagination be construed as the substitution of an existing obligation. There was no extension of additional credit in substitution of the existing obligation, as *In re Duffy*, 3 B.R. 263, 6 B.C.D. 88 (Bkrtcy.S.D. N.Y.1980).

In this case the debtor received additional merchandise from Greenwood after it paid Greenwood the $4000 in question. The debtor's receipt of this merchandise, invoiced at $10,169.84, was new value within the meaning of Code § 547(a)(2). The debtor's previous payment of $4000 is excepted from classification as a voidable preference under Code § 547(b) because Greenwood thereafter delivered provisions in excess of $4000, namely $10,169.84, which comprised new value as defined in Code § 547(c)(4).

The trustee argues that the merchandise delivered by Greenwood to the debtor after the $4000 payment was in fact a sale to Emrite and not to the debtor and that Emrite acted as a guarantor of the transaction. Accepting this position, it does not follow that a sale by Greenwood to Emrite relieves the debtor from liability where the debtor received the merchandise and acknowledged liability for it. A guarantor is only secondarily liable and must pay if the obligor, who is primarily liable, does not pay. See 38 *C.J.S. Guaranty* § 1.

Having delivered additional merchandise valued at $10,169.84 after it received the $4000 in question, Greenwood cannot be required to return the $4000 to the trustee as a voidable preference because it is entitled to the "new value" exception under Code § 547(c)(4).

## CONCLUSIONS OF LAW

1. The provisions which the defendant delivered to the debtor after the receipt of a $4000 check from the debtor constituted "new value" within the meaning of Code § 547(c)(4).

2. The debtor's payment to the defendant on account of an antecedent indebtedness, made within 90 days of the commencement of this case, does not constitute a voidable preference because the debtor thereafter received new value from the defendant in excess of $4000, namely $10,-169.84, and such new value excludes the $4000 payment from classification as a preference because of the application of Code § 547(c)(4).

3. The trustee's complaint to recover the $4000 in question must be dismissed.

SUBMIT ORDER ON NOTICE.