In re BUFFALO AUTO GLASS, Debtor.

Mark J. SCHLANT, Plaintiff,

v.

Joan G. SCHUELER, Defendant.

Bankruptcy No. 94–10332 K.
Adv. No. 94–1269 K.

United States Bankruptcy Court,
W.D. New York.

Sept. 18, 1995.

Mark J. Schlant, Zdarsky, Sawicki & Agostinelli, Buffalo, New York, for Plaintiff.

Matthew B. Herdzik, Jr., West Seneca, New York, for Defendant.

MICHAEL J. KAPLAN, Chief Judge.

These reciprocal motions for summary judgment raise the issue of whether a principal of a corporation who is an owner, officer, director and employee of that corporation who elected to forgo her usual pay in favor of repayments of loans she had extended to the corporation, must disgorge such repayments as voidable preferences under 11 U.S.C. § 547, when the corporation subsequently becomes a debtor under the Bankruptcy Code.

The Court rules that the payments satisfy the elements of a preference outlined in § 547(b), and that although the Defendant might enjoy a partial affirmative "new value" defense under § 547(c)(4), the new value provided by her forbearance is not to be measured by reference to the size of her paycheck, and in fact may be too speculative to be capable of proof.

## FACTS

The following facts appear to be undisputed.[1] Defendant Joan G. Schueler was an officer, director and equity holder of Buffalo Auto Glass, Inc., which filed a Chapter 7 bankruptcy petition on February 10, 1994, and as such, she was an insider of the Debtor corporation.

Between 1988 and 1992, Ms. Schueler made several loans to the corporation, evidenced by demand notes, totalling approximately $73,000. In order to ease the Debtor's cash flow problems in 1993, Ms. Schueler (who was in charge of writing checks on behalf of the Debtor) took repayments on her loan equal to what her net paycheck would normally have been, in lieu of an actual paycheck. In this way, the corporation would not have to pay withholding taxes and the like. These payments occurred within the one year preference period applicable to insiders. Only one check, however, was honored within the ninety day period prior to the filing during which the Trustee has the benefit of a presumption of insolvency.[2] The Trustee claims that these checks were preferential repayments of the antecedent loans. Defendant claims that the Debtor corporation was not insolvent in the year prior to the filing, and therefore the payments do not satisfy the § 547(b)(3) element of a preference. Defendant further asserts that the work she was doing for the Debtor gave new value to the Debtor, and as such constitutes a defense to the preference action under § 547(c)(4).

## DISCUSSION

### 11 U.S.C. § 547(b)(3): Insolvency at the Time of Transfer.

■ Defendant asserts that the Debtor corporation was not insolvent at the time that the transfers were made, and therefore the transfers were not preferences. The Trustee is entitled to a presumption that the Debtor was insolvent "on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). Here, the Defendant has offered no evidence in her response to the Trustee's summary judgment motion substantial enough to overcome that presumption.

---

1. These facts are taken largely from the Trustee's motion for summary judgment.

2. For preference purposes, a transfer by check is deemed to have occurred on the date that the check is honored by the bank. *Barnhill v. Johnson*, 503 U.S. 393, 399, 112 S.Ct. 1386, 1390, 118 L.Ed.2d 39 (1992).

■ As for the window of time between ninety days and one year prior to filing, however, the Trustee does not enjoy the benefit of such a presumption. In fact, the burden of proof is on the Trustee to prove that the Debtor was insolvent during that time period. 11 U.S.C. § 547(g).

The Bankruptcy Code deems a corporation to be "insolvent" if "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of [property concealed to defraud creditors and exempt property.]" 11 U.S.C. § 101(32)(A). The Trustee has provided a copy of the Debtor's corporate tax return for the time period in question, which shows negative retained earnings. There being no evidence offered by the Defendant under Fed.R.Civ.P. 56(e) as to why that does not establish the corporation's insolvency at that time, the Court finds that the tax return establishes the Debtor's insolvency at the time of the transfers by a preponderance of the evidence.

### Forbearance as New Value

■ The remaining question at issue is whether Defendant has established an affirmative defense of "new value" under § 547(c)(4). How much new value, if any, Defendant provided to the Debtor is a question of fact, to be measured as explained below. Defendant argues that because she was not receiving a paycheck while she was still working for the Debtor, the services she provided "for free" gave new value to the Debtor equal to the amount she was paid.

■ Regular payroll typically enjoys immunity from preference attack,[3] but the payments to Ms. Schueler were specifically intended not to be payroll. Had they been payroll, the corporation would have had to disburse additional sums from its general operating funds. Making loan repayments in amounts equal to the principal's net pay improved the corporation's cash flow without undue hardship to the principal. Having deliberately elected to treat the payments as loan installments rather than as pay, she cannot later claim that those payments should be treated as compensation for work she did for purposes of satisfying the § 547(c)(4) new value defense to a preference. The payments do not enjoy such a chameleon-like character.[4] They are what they were intended to be, and not what they were intended not to be.

It is clear, then, that the checks written to Defendant should be considered as partial repayments of the antecedent loans, and not as paychecks. That being established, Defendant's argument can be distilled to the proposition that the new value given to the Debtor was her forbearance of any paycheck while she was working.

Historically, forbearance has not been viewed as new value, and some courts have stated that as a categorical rule. For example, in the case of *In re Duffy*, 3 B.R. 263 (Bankr.S.D.N.Y.1980), it was suggested that forbearance merely substitutes a future obligation for a current obligation and therefore is the mere "obligation substituted for an existing obligation [that] is expressly excluded from the definition of 'new value.'" *Id.* at 266 (citing 11 U.S.C. § 547(a)(2)); *see also Bernstein v. RJL Leasing (In re White River Corp.)*, 50 B.R. 403, 409 (Bankr.D.Colo. 1985) *rev'd on other grounds*, 799 F.2d 631 (10th Cir.1986); *Bavely v. Merchants Nat'l. Bank (In re Lario)*, 36 B.R. 582, 584 (Bankr. S.D.Ohio 1983).

In the *Duffy* case, there was a hint that the true question is whether there could be found in the forbearance some degree of "economic solace to the creditors of [the] estate." *In re Duffy*, 3 B.R. at 266.

---

3. The Court need not decide whether this is because payroll fails to fall within one or more of the requisite elements of a preference (e.g. if pay is not due until payday, then a payroll check is not a payment on an "antecedent debt") or because payroll squarely falls within one of the exceptions set forth in § 547(c).

4. In her Affidavit, Defendant first states that the Debtor "made periodic payments to me for the repayment of these loans," (Def.Aff. ¶ 4,) and that "the checks were made as payments to me *in lieu of* a salary." (Def.Aff. ¶ 8 (emphasis added).) Later, however, she claims that "because I was working at the company when these checks were written, the checks can be considered as payments to me for the services I rendered to the corporation." (Def.Aff. ¶ 10.)

Hence, in the case of *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153 (D.C.Cir.1986), the court rejected the statutory explanation of why forbearance alone does not constitute new value and instead decided that if forbearance alone were treated as new value, that would threaten the very policy that preference law is intended to service. If one may extract payments upon antecedent debts by a promise to forbear from acts that might cause the business to fail, the court reasoned, then one has simply accomplished the preference that the statute seeks to undo. *Id.* at 1158–59. The holding in *Drabkin* was expressly adopted and applied in the cases of *American Bank of Martin County v. Leasing Serv. Corp. (In re Air Conditioning, Inc. of Stuart)*, 845 F.2d 293, 298 (11th Cir.1988), *cert. denied*, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988); *Wolinsky v. Central Vt. Teachers Credit Union (In re Ford)*, 98 B.R. 669, 684 (Bankr.D.Vt.1989); *Chase Manhattan Bank v. Dent, A.I.M. (In re Trans Air, Inc.)*, 78 B.R. 351, 354 (Bankr.S.D.Fla.1987).

But cases such as *Charisma Investment Co. N.V. v. Air Florida System, Inc.*, 68 B.R. 596 (S.D.Fla.1986), *aff'd*, 841 F.2d 1082 (11th Cir.1988); and *Jones v. Society Bank & Trust (In re Riggs)*, 129 B.R. 494 (Bankr. S.D.Ohio 1991), enhanced such basic analyses with the fundamental proposition that new value must augment the debtor's estate. That the forbearer might have suffered some cost, expense, loss, or other detriment as a consequence of the forbearance is irrelevant. Rather, the statutory definition of new value requires that the debtor have received "money or money's worth ... in goods, services, new credit or the release of property." 11 U.S.C. § 547(a)(2). Some matters of mere forbearance do not involve any of these.

■ This Court rejects the categorical view, and adopts the view that where forbearance is alleged to constitute new value, the *actual* value to the debtor of the forbearance in "money or money's worth" must be established by the defendant.[5]

*Measuring New Value Added by Forbearance*

■ There still remains the factual issue of how much new value Defendant actually provided to the Debtor. It is not clear to the Court whether the Defendant has ever waived her claims for pay or whether she was merely deferring immediate payment of salary in exchange for preferential loan payments.

■ Even if she has waived her claim for pay, any new value provided by such waiver would be measured not by the amount of her pay, but by the value of her services in augmenting the Debtor's estate. This is so because the principal of a self-owned corporation pays himself or herself whatever salary he or she wishes, consistent with his or her goals for the corporation. Such salary bears no relation to the benefits conferred by the principal on the corporation.

■ On the other hand, if she has not waived her claim for pay, then any new value would be measured not by the amount of her pay or by the value (if any) of her services, but by the value of the improvement in the Debtor's cash flow position that resulted from its not having to set taxes (and other deductions or contributions aside).

How does one measure the value of a principal's forbearance of pay? Measuring the value of forbearance can be too speculative to be meaningful for § 547(c) purposes, even in more prosaic circumstances. For example, in *In re Lario*, 36 B.R. 582, the alleged new value involved was a landlord's forbearance from exercising its rights under the lease to terminate the lease or re-enter the premises. The landlord instead permitted the debtors to sell their restaurant business and assign the lease to others in exchange for some payments on past due rent. The court stated that it found the landlord's contention that its forbearance added value to the debtor's estate to be thoroughly speculative:

No evidence was presented which would indicate that [the debtor] could not have

---

**5.** *See Jet Florida, Inc. v. American Airlines (In re Jet Florida Sys.)*, 861 F.2d 1555, 1559 (11th Cir. 1988); *In re Installation Servs., Inc.*, 101 B.R.

282 (Bankr.N.D.Ala.1989); *Friedman v. 1000 Brickell, Ltd. (In re Advertising Assocs., Inc.)*, 95 B.R. 849, 851 (Bankr.S.D.Fla.1989).

sold the business without [the landlord's] consent to an assignment of the lease. For all we know, the business could have been purchased and moved to a new and better location.

Furthermore, it is possible that [the debtor's] estate might have suffered a smaller loss if the lease had been cancelled in June, rather than allowing six months back rent to accrue. Again, the evidence is silent on this point.

*Id.* at 584. Similarly, there is the dissent in the case of *Riegle v. Mahajan (In re Kumar Bavishi & Associates)*, 906 F.2d 942 (3rd Cir.1990). That case did not involve forbearance; rather, it involved a principal's willingness to personally guarantee a corporate loan in exchange for a preferential payment of a past loan. The majority decided that the personal guarantee provided a new value defense. The dissent, however, focused on an issue not addressed by the majority:

> [T]he record before us reveals no evidence as to the money's worth in value of the Appellee's alleged guarantor service.... I am simply not convinced that this value is not either too indeterminate or speculative to serve as new value in this context, or, assuming such guarantor service does have some value, that such value would be equivalent to [the dollar amount of the preferential payment].

*Id.* at 948 (Cower, J., dissenting).

Therefore, even though this Court believes that forbearance may provide new value, the actual value of said new value is for the Defendant, not the Trustee, to establish, and may be too speculative to be meaningful. If the Defendant waived her salary, what is the value of her services? If she merely deferred her salary, what is the value of the fact that the Debtor did not have to set payroll deductions and contributions aside?

## CONCLUSION

The Trustee is granted partial summary judgment as follows: The transfers satisfy all of the elements of a preference under § 547(b). However, the Defendant also is entitled to partial summary judgment as follows: The Defendant is entitled to a new value defense under § 547(c)(4) to the extent of the actual value, in money or money's worth, which augmented the Debtor's estate as a consequence of her forbearance of pay, at the time of each such forbearance. The Defendant is entitled to a trial on that issue alone, and this matter is set before the Court for a calendar call only at 11:30 a.m. on October 18, 1995, to select a trial date.

The question of how the Defendant may hope to establish such value beyond mere speculation remains for solution by the Defendant and her counsel. As indicated earlier in this decision, if the Defendant has waived any claims for salary, then the question is what the value of her services was to this Debtor's estate. That amount is not to be measured by the amount of her salary if the amount of her salary was dictated simply by the amount she wished to pay herself in light of the business' needs and goals. If she has not waived her salary claims, then the issue is the value of the benefit conferred by the improvement in the Debtor's cash flow position.

SO ORDERED.