IN RE ELEVA, INC., doing business as T.E.N. (Total Entrepreneur Network), Debtor.

Kenneth A. Rushton, Trustee, Plaintiff—Appellee,

v.

E & S International Enterprises, Inc., Defendant—Appellant.

BAP No. UT–98–091.
Bankruptcy No. 97–22299.
Adversary No. 98–2179.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 29, 1999.

Steven W. Dougherty of Anderson & Karrenberg, Salt Lake City, Utah (Craig A. Switzer of Hemar & Rousso, Encino, California, with him on the brief), for Defendant—Appellant.

Michael N. Zundel (Michael D. Mayfield with him on the brief) of Jardine, Linebaugh & Dunn, Salt Lake City, Utah, for Plaintiff—Appellee.

Before BOHANON, ROBINSON, and CORNISH, Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

The court has before it for review an order granting partial summary judgment in favor of the trustee. After the bankruptcy court entered the order, the parties agreed that judgment should be entered for the trustee. For the reasons set forth below, the bankruptcy court's decision should be affirmed.

## BACKGROUND

The parties submitted this matter to the bankruptcy court on a Stipulation of Undisputed Facts. On December 20, 1996, E & S International Enterprises, Inc. ("E & S") shipped product valued at $31,200.00 to Freecom Communications, Inc., which is the parent company of the debtor. On December 27, 1996, E & S shipped additional product valued at $39,502.50 to Freecom Communications, Inc. On January 3, 1997, the debtor delivered a check in the amount of $49,161.00 to E & S for payment of invoices. The check was honored by the drawee bank on January 6, 1997. The first shipment was delivered to Freecom Communications, Inc. on January 6, 1997, and a second shipment was delivered to Freecom Communications, Inc. on January 9, 1997. The parties have stipulated that a prima facie avoidable preference exists. The issue before this court is whether E & S has a defense to the preference as set forth within 11 U.S.C. § 547(c)(4).

## JURISDICTION

This court, with the consent of the parties, has jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158; Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1(a). The bankruptcy court's order is a final order. Neither party has opted to have this appeal heard by the United States District Court. 28 U.S.C. § 158; Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1(a) and (d). As a result this Court has jurisdiction to hear this appeal.

## STANDARD OF REVIEW

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); Fed. R. Bankr.P. 8013; *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1370 (10th Cir.1996). The parties submitted this matter to the bankruptcy court on Stipulation of Facts; the only issue is a question of law. Therefore, the bankruptcy court's decision will be reviewed *de novo.*

## DISCUSSION

An avoidable preference is set forth in 11 U.S.C. § 547(b), which provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Once a trustee has established that a transfer is a preference, a creditor may assert a defense as provided in 11 U.S.C. § 547(c). E & S asserts that it is entitled to the subsequent advance exception, which provides:

(c) The trustee may not avoid under this section a transfer—

\* \* \*

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor *gave* new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4) (emphasis added). The United States Supreme Court held that under § 547(b), a transfer is deemed to occur on the date the check is honored. *Barnhill v. Johnson,* 503 U.S. 393, 401, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). The Supreme Court acknowledged that the legislative history for § 547(c) stated a payment was to be considered made when the check was delivered. The Supreme Court noted:

These sections are designed to encourage creditors to continue to deal with troubled debtors on normal business terms by obviating any worry that a subsequent bankruptcy filing might require the creditor to disgorge as a preference an earlier received payment. But given this specialized purpose, we see no basis for concluding that the legislative history, particularly legislative history explicitly confined by its own terms to § 547(c), should cause us to adopt a 'date of delivery' rule for purposes of § 547(b).

*Barnhill,* 503 U.S. at 402, 112 S.Ct. 1386. Another court noted: "[w]hile the courts are not unanimous on this issue, by far the majority hold that, for purposes of section 547(c)(4), the transfer occurs when the check is delivered." *Kroh Bros. Dev. Co. v. Continental Constr. Engineers, Inc. (In re Kroh Bros. Dev. Co.),* 930 F.2d 648, 650 (8th Cir.1991) (footnote omitted). Other courts have also determined that the date of delivery of the check is the date of the preference for § 547(c)(4) purposes. *See Chaitman v. Paisano Automotive Liquids, Inc. (In re Almarc Mfg., Inc.),* 62 B.R. 684, 687 (Bankr.N.D.Ill.1986). We thus conclude the preferential transfer occurred on the date the check was delivered, January 3, 1997.

■ The pivotal issue then becomes whether new value was given before or after January 3, 1997. In order to qualify for the new value defense, the creditor must prove: (1) new value was given to the debtor after the preferential transfer; (2) that the new value was unsecured; and (3)

that it remained unpaid. *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228 (9th Cir.1995). "New value" is defined as:

[M]oney or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation. . . .

11 U.S.C. § 547(a)(2). We therefore must decide whether the new value was given at the time the goods were delivered to Freecom Communications, Inc.

Courts have held that a creditor extends new value when goods are shipped. *Almarc Mfg.*, 62 B.R. at 687; *Rovzar v. Prime Leather Finishes Co. (In re Saco Local Dev. Corp.)*, 30 B.R. 859, 862 (Bankr. D.Me.1983). The court in *Almarc Mfg.* stated: "[t]here is no doubt when Paisano extended unsecured credit to the debtor (on November 29), the date the additional goods were shipped." *Id.* at 687. Another court noted that the shipment of goods made before the transfer in question did not allow the creditor to invoke the § 547(c)(4) exception. *Gropper v. Samuel Kunstler Textiles, Inc. (In re Fabric Buys of Jericho, Inc.)*, 22 B.R. 1013, 1017 (Bankr.S.D.N.Y.1982). New value was given when the sulphur was shipped. *Brown v. Shell Canada, Ltd. (In re Tennessee Chemical Co.)*, 159 B.R. 501, 513 (Bankr.E.D.Tenn.1993), *aff'd in part, rev'd in part*, 112 F.3d 234 (6th Cir.1997). When determining the time at which new value was given when it pertains to electricity, the new value was given when the electricity is provided. *Remes v. Consumers Power Co. (In re Camelot Motors Corp.)*, 86 B.R. 520, 523 (Bankr.W.D.Mich. 1988). Another court found that the date the new value was given is the date the personal services are rendered. *Excel Enters., Inc. v. Sikes, Gardes & Co. (In re*

*Excel Enters., Inc.)*, 83 B.R. 427, 431 (Bankr.W.D.La.1988) (citations omitted).

The language of § 547(c)(4) supports this line of cases. That section focuses on the fact that a trustee may not avoid a transfer to the extent that after the subject transfer the creditor *gave* new value. "Give" is defined as "to part with: relinquish." Webster's II New Riverside University Dictionary 532 (1984). E & S relinquished the product on December 20, 1996 and December 27, 1996.

■ The purpose of § 547(c)(4) is to encourage creditors to deal with troubled businesses. *Almarc Mfg.*, 62 B.R. at 687–88. If that is the purpose, the Court believes that the relevant date to determine when new value is given is the date of the shipment of the goods. In this case, E & S extended credit and shipped the goods before the preference occurred. New value cannot be given as an aforethought. Further, use of the delivery date would treat creditors arbitrarily based on the method of shipment used or distance the product must travel. This case is distinguished from *Camelot Motors* and *Excel Enterprises*. When the electricity is relinquished by the supplier, there is essentially no time delay in receipt. Also, with personal services, they are relinquished at the same time the personal services are delivered.

■ The trustee and E & S acknowledge that both California and Utah law permit the shipper to stop the shipment if it determines the debtor is insolvent. E & S argues that forbearance of this right constituted new value. However, courts have held that forbearance of a right does not constitute new value. *Bavely v. Merchants Nat'l Bank (In re Lario)*, 36 B.R. 582 (Bankr.S.D.Ohio 1983) (lessor's forbearance from exercising his right to evict debtor did not constitute new value); *In re Duffy*, 3 B.R. 263 (Bankr.S.D.N.Y.1980) (car lessor's forbearance from repossessing vehicle did not constitute new value); *see also United States Lines (S.A.), Inc. v.*

*United States (In re McLean Indus., Inc.)*, 132 B.R. 247, 263 (Bankr.S.D.N.Y.1991) (agreeing to forbear from proceeding with a default action pursuant to terms of mortgages did not constitute new value), *aff'd*, 162 B.R. 410 (S.D.N.Y.1993), *rev'd on other grounds*, 30 F.3d 385 (2d Cir.1994). "[F]orbearance, whether consensual/nonconsensual, direct/indirect, unilateral/bilateral, or intentional/unintentional, may not constitute new value under § 547(a)(2) for § 547(c)(4) purposes." *Wolinsky v. Central Vt. Teachers Credit Union (In re Ford)*, 98 B.R. 669, 684 (Bankr.D.Vt.1989). This Court therefore concludes that forbearance from stopping the shipment does not constitute new value. As a result, E & S has no defense to the avoidable preference.

## CONCLUSION

After the preferential transfer, on January 3, 1997, no new value was extended by E & S. The value was extended at the time the goods were shipped, December 20, 1996 and December 27, 1996, which was prior to the time of the preference. Furthermore, since forbearance of a right does not constitute new value, E & S has no defense to the avoidable preference. As a result, the bankruptcy court's order is **affirmed**.